FILED

2025 Dec-05  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**KRISTOPHER ADAMS,**

    **Plaintiff,**

**v.**

**MARK PETTWAY, in his official capacity as SHERIFF OF JEFFERSON COUNTY, ALABAMA, et al,**

    **Defendants.**

**Case No. 2:23-cv-1765-HDM**

### <u>MEMORANDUM OPINION</u>

Plaintiff Kristopher Adams sues Defendants Mark Pettway and Nashonda Howard ("Defendants") for violations of Title VII, § 1981, § 1983, and the Equal Protection Clause. Defendants now move for summary judgment arguing that as a matter of law, Adams has failed to prove discrimination or retaliation under any of the asserted statutes or constitutional provisions. The court agrees and **GRANTS** their motion for summary judgment.

### BACKGROUND

Plaintiff Kristopher Adams, a white male, was hired as a deputy for the Jefferson County Sheriff's Office in 2015 and assigned to the Corrections Division,

Birmingham Jail. (Doc. 41-1 at 5). Deputy Adams received the Sheriff's Office's Policy Manual. *Id*. at 8. Deputy Adams had two years of prior law enforcement experience with the UAB police department before joining the Sheriff's Office. (Doc. 41-1 at 5). In 2017, Deputy Adams was reassigned to the Bessemer Patrol Division. (Doc. 41-3 at 3, 7).

On November 22, 2021, Sheriff Mark Pettway hired Herman Harris, a black male, as a deputy and assigned him to the Corrections Division at the Bessemer Jail. (Doc. 41-4 at 3, 15). Deputy Harris had 28 years of law enforcement experience, including as a supervisor for the Vice and Narcotics Division of the City of Birmingham Police Department from 1993 to 2018, where he reached the rank of Sergeant, and as an Alabama Department of Corrections Senior Investigative Agent from 2018 to 2021. *Id*. at 3, 16.

Three days before Deputy Harris's November 22 start date, Steven Cotten, a criminal division investigator, requested a transfer from Bessemer to Birmingham to be closer to his family. *Id*. at 2. Deputy Cotten's request created an immediate need for an experienced criminal investigator to replace him. *Id*. at 3. Deputy Cotten's transfer request was temporarily placed on hold until Sheriff Pettway could find a qualified replacement. *Id*.

Separately, on January 25, 2022, the Bessemer Criminal Division posted a vacancy notice to fill four criminal investigator positions. *Id*. at 2, 4, 25. Deputy

Adams, along with several other deputies, both black and white, submitted interest letters and interviewed for the positions referenced in the vacancy notice. *Id*. at 4.

After reviewing current personnel, Sheriff Pettway identified Deputy Harris as an experienced criminal investigator who could replace Deputy Cotten without the need for extensive training. *Id*. at 3. In April of 2022, Deputy Cotten was reassigned to the Birmingham Criminal Division pursuant to his transfer request. *Id*.; *see also id*. at 18. Simultaneously, Deputy Harris was reassigned to replace Deputy Cotten in the Bessemer Criminal Division. *Id*. at 20. On May 5, 2022, Deputy Adams filed a grievance with the Personnel Board of Jefferson County alleging Deputy Harris was reassigned to the Bessemer Criminal Division in violation of the Position Vacancy Notice, and purportedly due to nepotism. *Id*. at 4.

Regarding filling vacancies, the Jefferson County Sheriff's Office's policy and procedure manual provides:

> [I]n order to ensure all qualified personnel have a chance to be considered for a vacant position and the Sheriff's Office gets to choose the best qualified candidate for a vacant position, the following policy will be used for filling position vacancies within the Sheriff's Office personnel.

*Id*. at 10. The manual then enumerates five different routes through which position vacancies may be filled: (1) Transfer Requests, (2) Position Vacancy Notices, (3) Assignment Change Notifications, (4) Administrative/Limited Duty Assignments, and (5) Enforcement (i.e., Patrol) Assignments. *Id*. at 3, 10-12.

While his grievance was being processed, Deputy Adams was involved in multiple disputes with the Jefferson County Warrant Magistrate's Office located in Bessemer regarding his refusal to put on a face mask before entering their offices. (Doc. 41-1 at 10). On September 1, 2022, the Bessemer Magistrate's Office made a complaint about Deputy Adams's conduct to Sheriff Pettway. (Doc. 41-4 at 5). That same day, Sheriff Pettway transferred Deputy Adams from Bessemer Patrol to the Center Point Patrol substation. *Id*. Sheriff Pettway testified that the reassignment was made due to the complaint by the Magistrate's Office. *Id*. The reassignment did not alter Deputy Adams's pay, hours, or duties. *Id*. It merely relocated him from one location to another in the same county. *Id*.; (*see also* Doc. 41-1 at 25).

After his reassignment, Deputy Adams submitted a complaint of race discrimination and retaliation to the Jefferson County Sheriff's Office's Office of Affirmative Action on October 21, 2022. (Doc. 41-2 at 4-6). He complained that he was not selected for a Bessemer criminal investigator position and that Deputy Harris, a black male, was selected. *Id*. at 5. Additionally, Deputy Adams claimed he was reassigned by Deputy Chief NaShonda Howard of Internal Affairs on September 1, 2022, a day after he complained about having to wear a face mask when visiting the Jefferson County Warrant Magistrate Office in Bessemer. *Id*. Deputy Adams also submitted an EEOC Charge of Discrimination on the same day, October 21, 2022. (Doc. 1-1).

4

Deputy Adams ultimately brought this suit against Deputy Chief Howard and Sheriff Pettway, asserting claims of race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §§ 1981 and 1983. (Doc. 14 at 2). Deputy Adams bases his discrimination claim on the hiring of Deputy Harris rather than himself to replace Deputy Cotten as a Bessemer criminal investigator. (Doc. 14). He bases his retaliation claim on his transfer to the Center Point substation. *Id*.; (*see also* Doc. 41-1 at 10).

Deputy Chief Howard and Sheriff Pettway moved for summary judgment on all counts. (Doc. 41). The motion is fully briefed. (Docs. 42-45).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

### A. Discrimination under Title VII

Deputy Adams claims that Sheriff Pettway and Deputy Chief Howard discriminated against him on the basis of his race in violation of Title VII. (Doc. 14 at 6-7). Sheriff Pettway and Deputy Chief Howard argue that summary judgment is warranted because they did not treat a similarly situated employee of a different race more favorably than they treated Deputy Adams. (Doc. 42 at 9-12). They also argue that summary judgment is warranted because Deputy Adams has produced no evidence creating a reasonable inference of discrimination. (Doc. 45 at 5-8). Deputy Adams argues that summary judgment is not warranted because a black employee

who did not apply for the job at issue was given it over Deputy Adams. (Doc. 44 at 6).

Title VII makes it unlawful for an employer to fail or refuse to hire an individual because of that individual's race. 42 U.S.C. § 2000e-2(a). In cases where direct evidence of racial discrimination is lacking, a court analyzes the claim under the *McDonnell Douglas* framework. *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under this framework, to establish a *prima facie* case of discrimination, Deputy Adams must show that (1) he belongs to a protected group, (2) he was subjected to an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer more favorably treated similarly situated employees outside his protected group. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1221-22 (11th Cir. 2019). Even where a plaintiff can establish a *prima facie* case of discrimination, his claim nonetheless fails where the employer proffers a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to rebut it with evidence of pretext. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).

In this case, the only disputed element is the fourth—whether Deputy Adams's employer treated similarly situated employees outside of Deputy Adams's

class more favorably. (*See* Doc. 42 at 9-14). Viewing the evidence in the light most favorable to Deputy Adams, he has not demonstrated that his employer treated a similarly situated employee outside of his class more favorably.

For a plaintiff to demonstrate that they were treated less favorably than a similarly situated person outside of their class, that plaintiff must identify a "comparator." *Lewis*, 918 F.3d at 1227-28. To be similarly situated, the comparator must resemble the plaintiff in "**all material respects**." *Id.* at 1229 (emphasis added). To demonstrate that the comparator is similar in "all relevant respects," Deputy Adams must demonstrate that the purported comparator (1) "engaged in the same basic conduct (or misconduct)"; (2) has "been subject to the same employment policy, guideline, or rule"; (3) has "been under the jurisdiction of the same supervisor"; and (4) shared Adams's "employment or disciplinary history." *Id*. at 1227-28. Otherwise, "the different application of workplace rules does not constitute illegal discrimination." *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011).

Here, viewing the evidence in the light most favorable to Deputy Adams, he has not demonstrated a genuine dispute of material fact as to whether his employer treated a similarly situated employee outside of his class more favorably. Deputy Adams identified one purported comparator for Deputy Cotten's Bessemer criminal investigator position: Deputy Harris. (Doc. 14 at 7). But the vacancy created by

Deputy Cotten's transfer request created a need for an "experienced criminal investigator." (Doc. 41-4 at 3). At the time of Harris's hiring, Deputy Adams had only six years of law enforcement experience, no supervisory experience, and no criminal detective experience. (*See* Doc. 41-1 at 5). Deputy Harris, in contrast, had 28 years of law enforcement experience including as a Sergeant, supervisor, and Vice and Narcotics investigator. (Doc. 41-4 at 3, 16). Under the fourth prong of the adequate-comparator test, Adams and Harris were not "similarly situated in all material respects." Thus, having failed to identify an adequate comparator outside of his protected class who was treated more favorably than he was, Deputy Adams fails to present a *prima facie* case of racial discrimination under the *McDonnell Douglas* burden-shifting framework.[1]

Instead of addressing these deficiencies, Deputy Adams relies on an alternative test—the convincing mosaic analysis. (*See* Doc. 44 at 6). Under this approach, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"

---

[1] Note that even if Deputy Adams could demonstrate a *prima facie* case of race discrimination, his claim would still fail as a matter of law because he cannot show pretext. Sheriff Pettway selected Deputy Harris because there was an immediate need for an experienced investigator to replace Deputy Cotten, and Deputy Harris had the experience to fill that need. (Doc. 41-4 at 2-3; Doc. 42 at 13-15). Deputy Adams has put forth no evidence demonstrating that this stated reason for hiring Deputy Harris was a pretext for racial discrimination.

*Smith*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).

Under the convincing mosaic analysis, a plaintiff can avoid summary judgment if he presents evidence creating a "reasonable inference" that he was discriminated against based on his race. *Id*. But the convincing-mosaic test is not an end-run around *McDonnell Douglas*. Rather, "*McDonnell Douglas* and the 'convincing mosaic standard' are two ways to approach the same question: whether the plaintiff has put forward enough evidence for a reasonable jury to conclude that illegal discrimination occurred." *McCreight v. Auburn Bank*, 117 F.4th 1322, 1334 (11th Cir. 2024) (finding that the plaintiff failed to put forth enough evidence, under either test, for a reasonable jury to conclude that illegal discrimination occurred). As a matter of law, Deputy Adams has not done so.

Indeed, Deputy Adams completely fails to address the disparity in qualifications between Deputy Harris and himself. Instead, Deputy Adams's argument for discrimination reads: "a black employee, Herman Harris, was treated more favorably than the Plaintiff. The Defendant reassigned Harris to the Investigator position even though Harris did not apply for the position, did not interview for the position, and was NOT on the list for the position." (Doc. 44 at 6).

Employment with the Sheriff's Office is governed by the civil service Merit System rules and regulations of the Personnel Board of Jefferson County. *See* 1945

10

Ala. Laws 378 (Act No. 248) (the "Enabling Act"). The applicable rules, as laid out in the policy and procedure manual, specify five different routes through which position vacancies may be filled: Transfer Requests, Position Vacancy Notices, Assignment Change Notifications, Administrative/Limited Duty Assignments, and Enforcement (i.e., Patrol) Assignments. (Doc. 41-4 at 3, 10-12). The manual allows the Sheriff's Office to fill vacant positions using any one of these five different routes specifically so that "the Sheriff's Office gets to choose the best qualified candidate for a vacant position . . . ." *Id*. at 10. Each of these different hiring methods has its own guidelines and rules. *See id*. at 10-13.

Deputy Adams applied for the position of Investigator pursuant to a Position Vacancy Notice posted by the Bessemer Criminal Division. (Doc. 41-4 at 4; Doc. 41-1 at 8). Deputy Cotten was transferred to the Birmingham Criminal Division, and on the same day Deputy Harris was reassigned to Bessemer Criminal Division. (Doc. 41-4 at 3-4). This reassignment was consistent with Assignment Change Notifications. *See id*. at 3, 12. Thus, this was a valid exercise of Sheriff Pettway's authority.[2] And, regardless, even if Sheriff Pettway had hired Deputy Harris in

---

[2] Deputy Adams argues that this was not a valid exercise of Sheriff Pettway's authority because the Notice stated that "[a]ny vacancies that occur within [the listed] time frame will be filled from this list," referring to the list of candidates who applied pursuant to the Notice. (Doc. 41-2 p. 15). However, the time frame referenced in the Notice is six months beginning on January 25, 2022. Deputy Cotten requested a transfer, thus creating a need for an experienced investigator, on November 19, 2021, more than two months before the time frame began.

violation of the hiring guidelines, this would not by itself demonstrate discrimination. *See Springer*, 509 F.3d at 1350 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995)) ("'The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decisions were pretextual.'"). Thus, viewing the evidence in the light most favorable to him, Deputy Adams cannot show that he was discriminated against under the convincing mosaic analysis.

Because Deputy Adams has not put forth evidence of discrimination sufficient to satisfy the *McDonnell Douglas* test or the convincing mosaic analysis, his Title VII discrimination claim fails as a matter of law.

## B. Discrimination under § 1981, § 1983, and the Equal Protection Clause

The same discrimination arguments raised under Title VII are also raised under § 1981, § 1983, and the Equal Protection Clause. "Employment discrimination claims against state actors for violation of the Equal Protection Clause are cognizable under § 1983, and are subject to the same standards of proof and use the same analytical framework as discrimination claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018). The § 1981 claim cannot stand alone because "§

1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981." *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989)). Thus, these three claims can be analyzed together.

Because each of these claims is subject to the same standards of proof as a discrimination claim brought under Title VII, these claims fail for the same reasons as Adams's Title VII discrimination claim. Deputy Adams has not satisfied his burden under either the *McDonnell Douglas* test or under the convincing mosaic analysis. Additionally, Deputy Adams fails to address § 1981, § 1983, and the Equal Protection Clause in his discrimination argument. (*See* Doc. 44 at 5-7).

## C. Retaliation under Title VII

Deputy Adams claims that Sheriff Pettway and Deputy Chief Howard retaliated against him for reporting discrimination in violation of Title VII. (Doc. 14 at 10-11). Sheriff Pettway and Deputy Chief Howard argue that summary judgment is warranted because the alleged retaliation was not in response to protected conduct. (Doc. 42 at 9-12). Deputy Adams argues that summary judgment is not warranted because he was reassigned to a less desirable part of the county after he made two

complaints: first, that the magistrate was being unprofessional, and second, that he was discriminated against based on his race with regard to hiring. (Doc. 44 at 8-9).

Title VII makes it unlawful for an employer to retaliate against an employee because the employee reported race discrimination under Title VII. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, Deputy Adams must show that (1) he engaged in a statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) there is a causal relationship between the two. *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018). "If a plaintiff establishes a *prima facie* case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011).

Protected activity includes not only filing formal EEOC complaints, but also informally voicing complaints to one's superiors or using an employer's internal grievance procedures. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002). But the reporting must have been related to the alleged discriminatory acts under Title VII to be considered protected activity. *See Jeronimus v. Polk Cnty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (*per curiam*) (concluding that an employee's complaint of being "singled out"

and subject to "a campaign of harassment" was not related to sex or race, and thus, not protected activity).

Deputy Adams has not established a *prima facie* case of retaliation. Deputy Adams argues that his retaliation claim is based on two instances of statutorily protected activity. (*See* Doc. 44 at 8-9). The first fails because it did not involve statutorily protected activity. The second fails because it was not causally connected to the alleged retaliation.

First, Deputy Adams "asserts that he was reassigned to a less desirable part of the county one day after he complained that the African American magistrate was being unprofessional." *Id*. But Deputy Adams's complaint about the magistrate was not statutorily protected activity. The incident complained about involved a dispute between Deputy Adams and the magistrate over the Jefferson County Warrant Magistrate Office's requirement that Deputy Adams put on a face mask before entering their offices. (Doc. 41-1 at 10). The only complaint made by Deputy Adams about the mask incident prior to his reassignment was an incident report he submitted to his supervisor on August 31, 2022. (Doc. 41-2 at 2-3). Nowhere in this incident report, however, does Deputy Adams mention race or any other protected category. *Id*. Additionally, Deputy Adams admitted that the Magistrate's Office required *all* law enforcement officers and citizens visiting the courthouse to wear masks, not just him. *Id*. at 3; (*see also* Doc. 41-1 at 14). Because Deputy Adams does not mention

15

race or any other protected category in his incident report, his Title VII retaliation claim cannot succeed based on his complaint about the magistrate. *See Holt v. Lewis*, 955 F. Supp. 1385, 1387 (N.D. Ala. 1995), *aff'd*, 109 F.3d 771 (11th Cir. 1997) ("Because plaintiff did not oppose a discriminatory action that is proscribed by the statute, plaintiff fails to state a claim of retaliation under Title VII, and defendants' motion is due to be granted.").

Second, Deputy Adams asserts retaliation after "complaining about not being selected for a prestigious Investigator position in favor of an African American coworker who did not apply for the position, did not interview for the position, and was not even on the list of candidates for the position." (Doc. 44 at 9). Deputy Adams submitted a complaint of race discrimination and retaliation to the Jefferson County Sheriff's Office's Office of Affirmative Action on October 21, 2022. (Doc. 42 at 7-8; Doc. 41-2 at 4-6). This complaint of race discrimination does constitute statutorily protected activity. However, that activity was not causally connected to the alleged retaliation. Deputy Adams was transferred to the Center Point Patrol substation on September 1, 2022, nearly two months *before* making his complaint of race discrimination. *Id*. Thus, Deputy Adams's transfer cannot have been based on that complaint, which had not yet been made.

Deputy Adams's assertion of retaliation, then, necessarily refers to his *prior* complaints regarding Deputy Harris's hiring. These prior complaints, however,

alleged nepotism, not racial discrimination, as the impetus for Deputy Harris's hiring, and thus these complaints did not constitute statutorily protected activity. *See* 42 U.S.C. § 2000e-3(a), 2(a) (defining statutorily protected activity as opposition to an employment practice based on an "individual's race, color, religion, sex, or national origin" and not mentioning opposition to an employment practice based on nepotism). Thus, Deputy Adams has failed as a matter of law to establish a *prima facie* case of retaliation under Title VII.

And even if Deputy Adams had established a *prima facie* case of retaliation under Title VII, Sheriff Pettway has successfully proffered a legitimate, non-discriminatory reason for the transfer, thus shifting the burden back to Deputy Adams to demonstrate that Sheriff Pettway's proffered explanation is a pretext for retaliation. Deputy Adams has failed to make such a showing. The Jefferson County Magistrate's Office made a complaint to Sheriff Pettway about Deputy Adams's conduct while transacting business at the courthouse. (Doc. 41-4 at 5). Shortly thereafter, and according to Sheriff Pettway's affidavit, as a direct result of the complaint by the Magistrate's Office, Sheriff Pettway reassigned Deputy Adams to a different substation in a different community. *Id*. Deputy Adams has presented no evidence rebutting Sheriff Pettway's legitimate, non-discriminatory reason for reassigning him. Deputy Adams cannot carry his burden merely by questioning Sheriff Pettway's proffered reason. "[T]o avoid summary judgment [the plaintiff]

must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (alteration in original) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). Because Deputy Adams has not made such a showing, his Title VII retaliation claim fails here, too, as a matter of law.

## D. Retaliation under § 1981, § 1983, and the Equal Protection Clause

The same retaliation arguments raised under Title VII are also raised under § 1981, § 1983, and the Equal Protection Clause. Retaliation claims under § 1981 are analyzed using the same framework as retaliation claims under Title VII. *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452-57 (2008)). The same is true for retaliation claims under § 1983. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). As with discrimination claims, "§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981," so the § 1981 and § 1983 claims may be analyzed together. *Butts*, 222 F.3d at 893 (citing *Jett*, 491 U.S. at 731-32). Because the § 1981 and § 1983 claims may be analyzed together, because they use the same analytical framework as do Title VII retaliation claims, and because Deputy Adams has, as discussed above, failed as

a matter of law to satisfy his burden under that framework, so too here he fails as a matter of law to carry his burden under § 1981 and § 1983.

As to Deputy Adams's retaliation claim under the Equal Protection Clause, no such claim exists. *See Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 341 (11th Cir. 1995) (holding that "no established right exists under the equal protection clause to be free from retaliation"); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."). Thus, this claim fails as a matter of law.

## CONCLUSION

For the reasons stated herein, the court **GRANTS** Defendants' motion for summary judgment (Doc. 41) and **DISMISSES** the case. A separate judgment will be issued along with this order.

**DONE** and **ORDERED** on December 5, 2025.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE